

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00390-CV

---

UNITEX WI, LLC AND UNITEX OIL AND GAS, L.L.C., APPELLANTS

V.

CT LAND AND CATTLE CO., LLC, APPELLEE

---

On Appeal from the 72nd District Court
Lubbock County, Texas
Trial Court No. 2019-536,249, Honorable John C. Grace, Presiding

---

June 28, 2024

## MEMORANDUM OPINION

Before QUINN, C.J., PARKER and DOSS, JJ.[1]

Arcade Fire sang "but a life without pain would be boring."[2]  The same holds with challenges.  We have challenging questions here which stir our judicial minds and result in a reversal of the trial court's judgment.

---

[1] Justice Lawrence Doss did not participate in this opinion or ultimate disposition of this appeal.

[2] "Unconditional I (Lookout Kid)," Arcade Fire.

*Background*

The appeal arose from effort by CT Land and Cattle Co., LLC, to force Unitex WI, LLC and Unitex Oil and Gas, L.L.C., (collectively Unitex) to bury pipeline atop the ranch surface CT Land acquired. The latter based its effort on a provision of a much earlier executed mineral lease. The lease was signed back in 1948. Minerals had been developed from the property throughout the ensuing years. Furthermore, numerous pipelines facilitating that development existed atop the land when CT Land bought the surface in 2013. Six years later CT Land invoked the burial provision and filed suit to enforce it. The causes of action alleged sounded in breached lease and declaratory relief.

The trial court convened a bench trial on the matter in 2022. It resulted in a judgment declaring 1) "CT Land has the right to enforce the Pipeline Burial Covenant as a matter of law" 2) "Unitex is required to bury all pipelines covered by the Fuller Lease below plow depth, and 3) "Unitex is compelled to satisfy the Pipeline Burial Covenant requirements under the Fuller Lease as rapidly as is reasonably possible." Unitex was also found to have breached the mineral lease by not burying the pipelines. Though CT Land was the victor, the trial court ultimately denied its attorney's fees via a separate order. This appeal ensued, and we have complaints before us from both Unitex and CT Land. Underlying those of Unitex are the trial court's recognition of CT Land's right to enforce the burial clause. CT Land complained of the trial court's denial of attorney's fees.

*Discussion*

Within the 1948 mineral lease, we find M. A. Fuller, W. M. Fuller, and Andrew P. Fuller named as the "Lessor." That is, the document states that the "agreement" is

between "M. A. Fuller, W. M. Fuller and Andrew P. Fuller, Lessor (whether one or more) . . . and Humble Oil & Refining Company, Lessee . . . ."[3]  One finds the clause at issue in paragraph "6" of the instrument.  It reads: "[w]hen required by Lessor, lessee will bury all pipelines below ordinary plow depth . . . ."

CT Land being neither a lessor nor an actual party to the lease, debate arose regarding its ability to enforce the burial provision.  Indeed, the court panel assigned the cause broached the question during oral submission.  CT Land proffered two arguments, and resolution of the issues posed by Unitex revolve around them.  So, addressing each argument in turn also addresses the dispositive points of error before us.

Through the first, CT Land acknowledges the deed conveying the surface estate from the Andrew P. Fuller Revocable Trust to CT Land's predecessors in title (the Senns) stated the conveyance was "subject to" the mineral lease.  That is, it said: "The conveyance of the Property to the Grantee, their heirs, successors and assigns is made SUBJECT, HOWEVER, TO:  A.  All valid and subsisting oil, gas and mineral leases . . . co-lessors agreements . . . which may have been granted by Grantor or Grantor's predecessors in title . . . and made a part hereof for all purposes, to the extent the same are valid and subsisting and affect the Property . . . ."  No one disputes that the 1948 mineral lease came within the scope of that clause.  And, according to CT Land, rendering the conveyance to the Senns "subject to" that lease purportedly meant the Senns, and

---

[3] Unitex eventually succeeded to the interests of Humble Oil & Refining Co. in the lease.

3

ultimately CT Land, were "assigned the rights, interests, and obligations of the lessor under the Lease which pertain to the surface estate."[4]  We disagree.

First, the deed expresses nothing about the Trust assigning any mineral lease to the Senns.  Nor do we wish to impose language evincing an assignment where none exists.  Indeed, rules of contract interpretation bar us from rewriting an agreement to mean something it does not.  *Natural Gas Clearinghouse v. Midgard Energy Co.*, 113 S.W.3d 400, 407 (Tex. App.—Amarillo 2003, pet. denied).  "[P]arties strike the deal they choose to strike and, thus, voluntarily bind themselves in the manner they choose."  *Id.*  We do not strike it for them.  So, had the Trust intended to transfer the rights and obligations of the lessor under that lease, it should have included language memorializing that intent.  It did not.

Second, and contrary to CT Land's suggestion otherwise, a "subject to" clause does not fill the void mentioned in the preceding paragraph.  Rather, "[t]he words 'subject to,' used in the ordinary sense, means subordinate to subservient to or limited by."  *Wenske v. Ealy*, 521 S.W.3d 791, 796 (Tex. 2017), (quoting *Kokernot v. Caldwell*, 231 S.W.2d 528, 531 (Tex. Civ. App.—Dallas 1950, writ ref'd)).  The clause actually limits the estate and associated rights granted and warranted to a party.  *Brooke-Willbanks v. Flatland Min. Fund, LP*, 660 S.W.3d 559, 564-65 (Tex. App.—Eastland 2023, no pet.); *Petro Pro, Ltd. v. Upland Res., Inc.*, 279 S.W.3d 743, 750 (Tex. App.—Amarillo 2007, pet. denied) (observing that a "subject to" clause constitutes a limitation to the grant).  It does not create affirmative rights.  *Kokernot*, 231 S.W.2d at 531.

---

[4] We take the quoted language from CT Land's live pleading; it captures the essence of the contention as uttered at oral submission.

Simply put, property granted "subject to" certain conditions is burdened by those conditions. *U.S. Bank Nat'l Ass'n v. H & H Pipe & Steel & Maddux Bldg. Materials, Inc*., No. 12-20-00142-CV, 2021 Tex. App. LEXIS 1792, at *8-9 (Tex. App.—Tyler March 10, 2021, pet. denied) (mem. op.). Applying this here reveals the "conveyance" to the Senns was "limited by" previously executed and subsisting mineral leases, including that executed in 1948. The lease and rights of the lessor thereunder were not transferred to the Senns or their successors.

As for the second contention urged by CT Land, it pertains to whether the clause about burying pipelines ran with the land. That served as the foundation for its claim, and its purportedly running with the land, CT Land could enforce it. Unitex disagreed. Apparently CT Land believed such a clause could run with the land, and that did not occur here due to abrogation by or reservation in the deed to the Senns. To resolve this debate, we again turn to the deed language.

Before we do, let us initially mention various rules applicable to construing written documents. The first reminds us to avoid blind application of arbitrary and mechanical "default rules." *Wenske*, 521 S.W.3d at 811 (describing several of such "default rules" to be avoided); *accord*, *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 747 (Tex. 2020) (requiring same). This is not true of other well-settled rules of contract interpretation, though. *See Piranha Partners*, 596 S.W.3d at 747. They include directives to 1) construe language according to its plain, ordinary, and generally accepted meaning unless the instrument directs otherwise, 2) construe words in the context in which they are used, 3) avoid any construction that renders any provisions meaningless, and 4) consider and construe all of a contract's provisions together so the effect or meaning of one part on

5

any other part may be determined. *Id.* Most importantly, our duty is to strive to give effect to the intent of the parties, which intent is garnered from the language of the document. *Natural Gas Clearinghouse*, 113 S.W.3d at 406-407. And, we remind ourselves that the parties are entitled to rely upon the words selected to demarcate their respective obligations and rights. *Id.*

Now we turn to the argument about a pipe burial clause running with the land. Apparently, the proposition had its genesis in writings from the United States Court of Appeals for the Fifth Circuit. In *Manges v. Gulf Oil Corp.*, 394 F.2d 487 (5th Cir. 1968), the court so viewed such a clause. *Id.* at 488. And, it did so after reiterating its earlier holding in *Mobil Oil Corp. v. Brennan*, 385 F.2d 951 (5th Cir. 1967). Yet, the *Mobil* panel also observed that "[i]t is not necessarily true that covenants continue to run with the land until expressly abrogated . . . ." *Id.* at 953-54. It then mentioned that the appellant in *Mobil* did "not argue that the covenants have ceased to run because they have always been disregarded or because conditions have so changed over the years as to make their enforcement unreasonable." *Id.* The potential application of these limitations to the continuing nature of the covenant were carried over into the *Manges* opinion. There we encounter language expressing that "this limitation by covenant would remain forever with the surface estate in the absence of certain circumstances, among which were express detachment or abrogation, disregard of the covenant, or change of conditions which would make its enforcement unreasonable." *Manges*, 394 F.2d at 488. So, assuming that *Manges* and *Mobil* have authoritative effect within state courts, *see Henry v. Smith*, 637 S.W.3d 226, 236 (Tex. App.—Fort Worth 2021, pet. denied) (noting, in reference to *Manges*, that Texas state courts are not bound by federal precedent save for decisions

6

of the United States Supreme Court on questions of federal law), simply uttering that a pipeline burial clause runs with the land does not necessarily end the controversy. Such is especially true here since Unitex argues that the Trust "detached" the burial provision from the conveyance to the Senns.

Our analysis begins with the assumption that a burial provision generally runs with the land. None of the parties argue otherwise.[5] So, we are tasked with determining whether it passed to CT Land. Answering that leads us back to the aforementioned "subject to" clause. To reiterate, it limited the estate and associated rights passing to the Senns. Furthermore, that limitation included the 1948 lease. As written, that document expressly identified the category of people entitled to require burial of the pipelines. They included the "Lessor" and their assigns, successors, or heirs to the Lessor's interests in the lease.[6] Had the parties desired to expand the category to include future owners of the surface, they could have said something akin to "surface owners" in place of "Lessor." That would have clearly indicated their intent to include more than simply the lessors and their assigns, heirs, and successors to the lease. But, they did not. So, 1) being required to construe and enforce both the deed to the Senns and the 1948 mineral lease as written, as opposed to how others may someday wish it were written, *Cross Timbers Oil Co. v. Exxon Corp.,* 22 S.W.3d 24, 26 (Tex. App.—Amarillo 2000, no pet.) (barring us from

---

[5] We do wonder whether the provision here actually satisfies one element to a covenant running with the land. It is that which requires the parties to the bargain to intend the covenant to so run. *Inwood North Homeowner's Ass'n v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987). Naming a particular category of individuals entitled to enforce it, as we will explain, seems to contradict the notion that the provision runs with the land; rather, it seems to suggest that the covenant is personal to those named. Nevertheless, this is not a matter we need address since no party raised it.

[6] The lease permitted its parties to assign their "rights" in the mineral lease in whole or part. It further provided that the lease provisions would extend to assigns, heirs, and successors of the lessors.

changing the contract merely because we or one of the parties comes to dislike its provisions or thinks that something else is needed in it), 2) the rights and estate obtained by the Senns being limited by and subject to the 1948 lease, and 3) the lessor being identified as the party capable of invoking the burial covenant, the pipe burial provision did not pass (or was otherwise detached) from the conveyance.

This interpretation comports with other conveyance provisions. For instance, the Trust conveyed the "Surface and Surface Only" to the Senns "TO HAVE AND TO HOLD the Property, together with all and singular the rights and appurtenances thereunto in any wise belonging (LESS AND EXCEPT the interests reserved, excepts or retained unto the Grantor and the Grantor's successors and assigns) unto the Grantee . . . ." One such "interest" is that represented in the 1948 mineral lease. Again, the deed was "subject . . . to" the lease, meaning that the estate and rights passing did not include the lease. *See Brooke-Willbanks, supra; Petro Pro, Ltd., supra.* And, again, it was that lease which gave "Lessor" the right to require burial. So, the Senns were granted the Property "to have and to hold . . . with all . . . rights and appurtenances . . . Less and except the interests . . . retained unto the Grantor . . . ," one such interest being the rights under the mineral lease. It was that lease which gave the lessor the ability to require burial.

More importantly, the Trust also "reserved and excepted" from the conveyance all substances of value in the property and "so much *of the surface* . . . as may be required to permit Grantor . . . to mine, drill, develop, explore, operate, handle, *transport*, and market . . ." them. (Emphasis added); *see Patrick v. Barrett*, 734 S.W.2d 646, 647 (Tex. 1987) (stating that an exception in a deed does not pass title itself but operates to prevent the excepted interest from passing while a reservation is made in favor of the grantor who

8

reserves for himself royalty interests, mineral rights, and other rights). If the Senns and their successor CT Land were entitled to enforce the burial covenant, then the Trust could not utilize the surface to transport the substances produced despite having expressly reserved it for that purpose. Interpreting the deed as detaching the burial provision from the conveyance fosters the Trust's express reservation "of the surface" as a means of transporting the minerals it retained for developing.

We agree with Unitex. The burial covenant was detached through application of the "subject to" provision and the reservations and exceptions within the deed. The deed may not have specifically said something like "the pipeline burial provision is retained by the Grantor." And, we know about the rule of deed interpretation saying that a reservation must be by clear language and cannot be implied. *Piranha Partners*, 596 S.W.3d at 748. Yet, looking at a jigsaw puzzle missing one piece does not necessarily prevent the viewer from seeing a picture. Contracts, deeds, leases, and other instruments are like such jigsaw puzzles filled with words, clauses, and paragraphs forming the pieces which, when fitted together, reveal the picture. Our task is to look at all the pieces to discern the picture, as opposed to focusing on the missing piece while ignoring the rest. So too have we been reminded to forego the mechanical, arbitrary default rules when attempting to understand what depiction emanated from the words, clauses, and paragraphs used. *Id.* at 747. In looking at all the pieces to the puzzle within the deed to the Senns, we can certainly see what the Trust intended. Whether viewed as a reservation or detachment or whatever, the words selected by the Trust clearly revealed its intent to prevent the Senns and their successors from gaining interests in or rights under the 1948 mineral lease. They clearly reveal an intent to bar impediment to the development of minerals

9

and utilization of the surface to further that purpose. So, it follows that they clearly reveal an intent to end such potential impediments like the burial covenant.

In short, the trial court erred in 1) declaring that "CT Land has the right to enforce the Pipeline Burial Covenant as a matter of law," 2) holding that Unitex breached the covenant when refusing to accede to efforts by CT Land to enforce it, and 3) enjoining Unitex from retaining or placing pipelines atop the surface when CT Land insists otherwise. Our holding relieves us from addressing the remaining issues urged by Unitex.[7]

As for the sole issue raised by CT Land, it pertains to the trial court's denying it attorney's fees. The entity sought them under sections 37 and 38 of the Texas Civil Practice and Remedies Code. Through the former, a trial court may award reasonable attorney's fees as are equitable and just. TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. Moreover, their recovery is not dependent upon receiving favorable declaratory relief or otherwise substantially prevailing. *Morath v. Tex. Taxpayer & Student Fairness Coalition*, 490 S.W.3d 826, 885 (Tex. 2016). Also of note is that "[w]here the extent to which a party prevailed has changed on appeal, [the] practice has been to remand the issue of attorney fees to the trial court for reconsideration of what is equitable and just." *Id*. We do so here,

---

[7] Yet, that in no way should be construed as indicating whether those issues have substance. Indeed, whether the burial clause was waived, abandoned, or the like (as urged by Unitex) are weighty matters given authority implying "reasonable" time limits to act when agreements omit specific time periods. *See Tillison v. Bailey*, No. 06-05-00071-CV, 2006 Tex. App. LEXIS 4529, at *6 (Tex. App.—Texarkana May 26, 2006, no pet.) (mem. op.) (stating that when a contract does not provide a time for performance, the law will imply that performance must occur within a reasonable time); *Pearcy v. Envtl. Conservancy of Austin and Cent. Tex., Inc.*, 814 S.W.2d 243, 246 (Tex. App.—Austin 1991, writ denied) (same); *see also*, *Alford, Meroney & Co. v. Rowe*, 619 S.W.2d 210, 213 (Tex. App.—Amarillo 1981 writ ref'd n.r.e.) (describing various ways waiver may occur). The interplay between the implication of acting within a reasonable time and waiting years to demand burial is another of the challenging questions preventing judicial minds from succumbing to boredom.

given that the extent to which a party has prevailed on the declaratory matter changed. This decision pretermits our further consideration of CT Land's attorney's fees issue.

The judgment of the trial court is reversed, and the cause is remanded to the trial court. On remand, the trial court is directed to enter judgment in accordance with this opinion, which includes reconsideration of attorney's fees.


Brian Quinn
Chief Justice